**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL FACKLER, | ) | CASE NO. 3:16-cv-02674 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Social Security*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Crystal Fackler (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD") and Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et*

*seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the

undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule

72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be REVERSED and REMANDED for

proceedings consistent with this opinion.

## I.  Procedural History

On August 3, 2012, Plaintiff filed her applications for POD and DIB, alleging a disability

onset date of March 29, 2010. (Transcript ("Tr.") 155-161). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 96-121). Plaintiff participated in the hearing on July 7, 2015, was represented by counsel, and testified. (Tr. 29-65). A vocational expert ("VE") also participated and testified. *Id*. On August 19, 2015, the ALJ found Plaintiff not disabled. (Tr. 22). On September 15, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On November 2, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 8, 10 & 11).

Plaintiff asserts the following assignments of error: (1) the ALJ relied on VE testimony that contradicted the Dictionary of Occupational Titles (DOT); (2) the ALJ failed to include manipulative restrictions in the residual functional capacity (RFC) assessment; (3) the ALJ failed to adequately set forth good reasons for rejecting the opinions of three treating or examining sources; and, (4) the ALJ should have found her disabled as of her 55th birthday under the relevant grid rules. (R. 1, PageID# 2199-2200).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

Between March of 2010, her alleged onset date, and March of 2011, Plaintiff saw J.

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. Plaintiff's brief is not compliant with the court's Initial Order (R. 4), which requires a "Statement of Relevant Facts," as it neglected to set forth Plaintiff's medical history.

Stephen Sandy, M.D., for regular primary care. (Tr. 342-71). In March of 2010, Plaintiff received treatment for laryngeal spasm and loss of her voice (Tr. 359-361). On March 16, 2010, she reported that her job involved investigating insurance fraud which required speaking on the telephone. (Tr. 359). Dr. Sandy kept her off work for two week to rest her voice. *Id*. (Tr. 359). On March 29, 2010, Dr. Sandy gave Plaintiff a return to work slip starting April 6, 2010. (Tr. 355). However, by that point, Plaintiff had quit her job. *Id*.

On May 19, 2011, Jimmy D. Alele, M.D., assessed Plaintiff with diabetes Type 2 with improved blood sugar levels, hypoththyroidism, and hyperlipidemia, which was improving. (Tr. 419-420). Plaintiff weighed 208 pounds, and a physical yielded unremarkable results. *Id*.

On May 16, 2012, treatment notes indicate that Plaintiff had a normal mood and affect, behavior, judgment, and thought content. (Tr. 447, 451).

On February 7, 2013, documentation from the Department of Veteran Affairs (VA) notes that Plaintiff had a 10 percent service connected disability due to limited motion of the forearm. (Tr. 498).

On September 19, 2011, Ankur Gupta, M.D., diagnosed hypothyroidism, dyslipidemia, Type II diabetes mellitus uncontrolled, and obesity. (Tr. 514).

On September 22, 2011, Plaintiff denied unexplained weight loss or weight gain, fever/chills, sweats, increased thirst, unusual bleeding or bruising, and anxiety/depression. (Tr. 886). She complained of occasional left ankle pain stemming from a fall one year earlier. *Id*. Her weight was down to 184 pounds. (Tr. 887).

On May 3, 2012, Plaintiff was seen by Jerry E. Flexman, Ph.D., a clinical neuropsychologist, with complaints of short-term memory problems. (Tr. 411-14). She reported last working in a clerical position, but quit because she did not like that type of work. (Tr. 411).

She reported no history of psychiatric care. (Tr. 412). On the Structured Inventory of Malingered Symptoms, Plaintiff's scores "fell well above the cut off score, especially on the affective distress scale, the affective disorder scale and the neurological impairment scale," which "would indicate that Ms. Fackler tends to overreact to problems and difficulties, especially from a cognitive perspective." *Id*. Achievement testing, Word Fluency testing, and Executive functioning testing were within the normal range. *Id*. Conversely, neurocognitive testing revealed scores in the mildly impaired range, showing some difficulties with long term memory, simple comprehension, and moderate difficulties with working memory. *Id*. Depression was indicated as well as some unusual thought processes. (Tr. 413). Secondary gain issues were "often noted, as well." *Id*. Dr. Flexman opined that Plaintiff did "not appear to be experiencing a general cognitive impairment due to organic difficulties." (Tr. 414). He noted that "[m]arked depression, anxiety, and some unusual thought process are indicated, which he believed "may be interfering with the efficiency with which she is able to process general information." *Id*. He stated that Plaintiff would benefit from psychotropic medication and psychotherapeutic intervention. (Tr. 414).

On December 3, 2012, Plaintiff met with a VA mental health counselor and reviewed the above consultative exam, but Plaintiff stated that "she didn't want counseling or any psych meds." (Tr. 503). She reported some depression due to being unable to procure a job. *Id*. Plaintiff further stated she was filing for disability and "if a [mental health assessment] would help her claim then she will have one." *Id*.

Nevertheless, Plaintiff returned to the VA for counseling in January, February, March, April, and May 2013 (Tr. 566-84, 1152-53, 1161-62, 1193-94, 1196-97, 1200, 1219-20, 1227-28, 1234-39). On February 6, 2013, Plaintiff was "alert and oriented, denies any SI/HI, mood was

appropriate with congruent affect, grooming appropriate for weather, good eye contact and actively engaged, was cooperative and pleasant….." (Tr. 567). The counselor noted that Plaintiff "tends to not take responsibility for her own diet and much rationalizing why she can't eat appropriately." *Id*. Treatment notes from February of 2013, March of 2013, May of 2013, yielded similar assessments. (Tr. 1153, 1196, 1200, 1220, 1228).

### 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On August 21, 2013, Plaintiff was seen by B.T. Onamusi who opined that Plaintiff could engage in light exertional work as defined by the DOT, but may only work in an environment where she will not be exposed to irritants, allergens, or odor. (Tr. 1540-42). On physical examination, Plaintiff was alert and oriented to time, place and person; speech was fluent, articulate and coherent; hearing was normal; memory for long and short-term events was not impaired; thought process was rational; there was no difficulty sustaining conversation; and, attention span was satisfactory. (Tr. 1541). On manual muscle testing, Plaintiff's strength, range of motion, and ability to use her hands were all 5/5 or normal. (Tr. 1543-1546).

On August 30, 2013, on reconsideration, State Agency physician Leon D. Hughes, M.D., completed an RFC assessment and found Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, stand/walk 6 hours, and sit for six hours in an 8-hour workday. (Tr. 89-90, Exh. 3A). Dr. Hughes found Plaintiff had no manipulative restrictions, but did have environmental restrictions. (Tr. 89). Specifically, Plaintiff had to avoid concentrated exposure to extreme temperatures, humidity, fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 89-90).

On September 18, 2013, Michael J. Wuebker, Ph.D., performed a psychological evaluation of Plaintiff at the request of the State Agency. (Tr. 1548-1553). Plaintiff was cooperative and maintained good eye contact; her "speech was clear and 100% understandable," her mood was

slightly depressed and her affect was appropriate; she was not paranoid and there was no clinical evidence of any thought disorder; she seemed to be functioning in the average range of cognition; and she demonstrated adequate insight and ability to make common sense judgments. (Tr. 15501515). Plaintiff reported that she spent her time watching television and playing computer games, making jewelry, interacting with her three dogs, visiting neighbors, talking with her sons, cooking, light cleaning, and shopping. (Tr. 1552). Dr. Wuebker opined that Plaintiff would be expected to understand and apply instructions consistent with her average range of intellectual functioning; would have no problems with maintaining attention and concentration or maintaining persistence or pace in the workplace; exhibited no attitudes or behavior that would suggest difficulty getting along with co-workers and supervisors; and, would be mentally and emotionally capable of responding appropriately to work setting pressures. (Tr. 1553).

On March 5, 2015, Plaintiff attended a physical examination with Sanjay S. Shah, M.D., in connection with her disability application. (Tr. 2012-2014). On physical examination, Plaintiff was 5'2" tall and weighed 197 pounds; she had full range of motion in the upper and lower extremities except for the right wrist, which was limited in extension, flexion, as well as ulnar and radial deviation; strength is limited around the right wrist due to the pain, but otherwise 5/5 throughout bilateral upper and lower extremities; straight leg raising test was negative; she was able to walk on her heals and toes, and squat without any difficulty; she had full range of motion of cervical and lumbosacral spine; she has a hoarse voice which increased with talking and multiple coughing episodes throughout the examination. (Tr. 2013). Dr. Shah opined that Plaintiff would have limitations with lifting, pushing, pulling or carrying with the right upper extremity due to her DeQuervains tenosynovitis, but no limitations in her ability to sit, stand, or

6

walk; and, no limitations in hearing, but she had limitations with speaking in that increased vocalization caused increased hoarseness. (Tr. 2014). He did not find any mental limitations. *Id.* He also noted that an evaluation for limitations caused by alleged chemical hypersensitivity was not within his expertise. *Id.*

On March 18, 2015, Chris L. Smith, a chiropractor, completed a checklist medical source statement indicating that Plaintiff could sit for up to eight hours a day and stand/walk for up to eight hours a day (Tr. 2010). He stated that Plaintiff could lift/carry up to 10 pounds with her right hand and she had no restrictions of the left hand. *Id.* He indicated that Plaintiff could not use her right hand for repetitive grasping or fine manipulation. *Id.* She could continuously bend, squat, crawl, climb, and reach. *Id.* He opined that Plaintiff's pain level was mild, and she did not need to alternate between sitting and standing. (Tr. 2011).

**B. Relevant Hearing Testimony**

At the hearing held on July 7, 2015, Plaintiff testified as follows:

- She is 5'2" tall and weighs 200 pounds. (Tr. 34).

- She is right-handed. (Tr. 35).

- She is able to drive, but must use caution when being near diesel trucks or smoke-filled areas. (Tr. 36)

- She served in the Marine Corps until 1983, where she was a cook. (Tr. 36).

- She became disabled in March of 2010. She did some seasonal work weighing trucks in 2011 for two months. (Tr. 37). The job was performed outdoors. *Id.*

- In March of 2010, she worked as a telephone solicitor, which involved calling insurance companies to verify people had insurance. She had that job for three years. (Tr. 38). She left the job after having difficulty breathing and losing her voice. (Tr. 38). She also worked for a bottling company first as a secretary and then as a sales clerk—each for three years. (Tr. 39, 57-58). Neither the telephone solicitor job nor the sales clerk job involved any lifting. (Tr. 39). She also worked as a case management secretary. (Tr. 40).

- When she is around colognes, fumes, gas, or cleaning supplies, she suffers from coughing fits similar to an allergy or asthma attack. She had been tested for allergies, but indicated they could not test for chemicals. (Tr. 41). The coughing fits result in constriction in her throat and upper chest resulting in difficulty breathing. (Tr. 41-42). This also causes her vocal cords to close up and makes her unable to speak. (Tr. 42). She wears a mask every day. *Id*. When she has an allergy attack, she loses her voice the majority of the time and does not regain it until the next morning. (Tr. 44).

- She has diabetes and passes out at least one a month due to hypoglycemia. (Tr. 45-46).

- Around the house she does laundry once a week and some light vacuuming. (Tr. 46-47).

- She has had to leave restaurants before receiving her meal due to a bad reaction from another customer's cologne or an employee's use of cleaning sprays. (Tr. 47-48).

- She injured her right wrist playing volleyball in 1982. She wears a wrist brace. Repetitive action causes numbness or cramping. (Tr. 49). She can lift only 10 pounds with her right hand. (Tr. 50).

- She has problems with concentration and an inability to focus. (Tr. 51). She has episodes once a month where she cannot remember and has gotten lost driving home even where she knew the route. *Id*.

The VE classified Plaintiff's past relevant work as follows: telephone solicitor (DOT 299.357-014), sedentary with an SVP rating of 3; secretary (DOT 201.362-030), sedentary with an SVP rating of 6; and, customer order clerk (DOT 249.362-026), sedentary with an SVP of 4. (Tr. 58-59). In response to the ALJ's question whether those positions involved any transferable skills, the VE testified that her skills would transfer to other clerical type jobs at the sedentary level. (Tr. 59).

The ALJ posed the following hypothetical to the VE:

> I would like you to assume that the Claimant is capable of working at the light exertional level … except that she should avoid concentrated exposure to extreme heat, cold, and humidity, and avoid all exposure to pulmonary irritants such as odors, including perfumes and colognes, dust, fumes and gasses. Could she perform any of her past employment?

8

(Tr. 59).

In response to these restrictions, the VE testified that such an individual would be able to perform all past work. (Tr. 59). The ALJ inquired with respect to the impact of an additional restriction: "occupations that do not require frequent verbal communication." (Tr. 59). The VE testified that such an individual would be unable to perform the telephone solicitor or customer order clerk jobs, but could still perform work as a secretary. (Tr. 60). The ALJ posed another hypothetical incorporating the restrictions of the first, but adding that the individual could lift only ten pounds with the right upper extremity and 20 with the left with frequent handling and fingering with the right hand. (Tr. 60). The VE testified that all past work could be performed. (Tr. 60). Again, the additional restriction of no frequent verbal communication eliminated the telephone solicitor and customer order clerk jobs, but not the job of a secretary. (Tr. 60-61). The VE identified other jobs as representative examples that such an individual could perform: mail sorter (DOT 209.687-026) with 16,100 jobs nationally and 150 locally; label coder (DOT 920.587-014), with 47,100 jobs nationally and 400 locally; and, routing clerk (DOT 222.687-022), with 83,800 jobs nationally and 375 locally. (Tr. 61).

The VE testified that the need to wear a filter mask at all times at work would not impact his response. (Tr. 61). However, if an individual had to leave work early, unscheduled, twice per month, such a person would be unemployable. (Tr. 61-62).

Plaintiff's counsel asked what the duties of a secretary include. (Tr. 62). The VE responded that it includes "general type clerical duties, filing, copying, typing letters, taking dictation, answering the telephone, those types of things." *Id*. According to the VE, the amount of time answering the telephone could vary depending on the setting, noting that a secretary answered the phone less than a receptionist but "[t]hat's something that the DOT doesn't really get into in

that much detail." *Id*. He also testified that the secretary position, per the DOT, requires the use of both hands on a frequent basis. (Tr. 64).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 29, 2010 through her date last insured of June 30, 2015 (20 CPR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: vocal cord dysfunction, chemical hypersensitivity, diabetes, cervical degenerative disc disease, obesity, and DeQuervain's tendonitis on the right (20 CPR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to lifting 10 pounds with her 1ight hand and is limited to frequent handling and fingering on the right. The claimant must avoid concentrated exposure to extreme heat, cold and humidity and must avoid all exposure to pulmonary irritants such as odors, including perfumes/colognes, dust, fumes and gases. The claimant is further limited to occupations that do not require frequent verbal communication and she must be allowed to wear a filter mask at all times.

6.  Through the date last insured, the claimant was capable of performing past relevant work as a Secretary. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant was born on December **, 1957 and was 52 years old, which is defined as individual closely approaching advanced age on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills was material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant was either "disabled" or "not disabled," depending on whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed in the period from March 29, 2010 until the day before her 55th birthday, December 17, 2012 (20 CFR 404.1569, 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from March 29, 2010, the alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(t)).

(Tr. 10-22).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. RFC and Past Relevant Work**

In the first assignment of error, Plaintiff asserts the ALJ's own RFC finding would prevent her from performing her past relevant work as a secretary. (R. 8, PageID# 2201-2203). Specifically, Plaintiff points to the component of the RFC that limited her to occupations "that do not require frequent verbal communication." (R. 8, PageID# 2201, *citing* Tr. 14).

In the present case, the ALJ relied upon the VE's testimony that even if she was "limited to occupations that do not require frequent verbal communication," Plaintiff, nevertheless, could perform her past work as a secretary, but not her work as a telephone solicitor or a customer order clerk. (Tr. 59-60). In her brief, Plaintiff asserts that the job of a secretary, pursuant to the DOT, requires frequent talking (*i.e.* verbal communication), and therefore, the VE's testimony conflicts with the DOT.[2] (R. 8, PageID# 2201-2203). Furthermore, Plaintiff argues the ALJ was

---

2 The Commissioner's brief construes Plaintiff's argument as suggesting that the need for *frequent* verbal communication stems from Plaintiff's testimony as to how she performed the job rather than from the DOT's description of the job. (R. 10, PageID# 222-2225). As discussed *infra*, the need for frequent talking derives from the DOT itself, or more specifically, from the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") § 07.01.03, U.S. Dept. of Labor (1993). Thus, the Commissioner's brief fails to

obligated to resolve this conflict. *Id.*

The Dictionary of Occupational Titles ("DOT") describes the occupation of "Secretary" as follows:

> Schedules appointments, *gives information to callers*, takes dictation, and otherwise relieves officials of clerical work and minor administrative and business detail: Reads and routes incoming mail. Locates and attaches appropriate file to correspondence to be answered by employer. Takes dictation in shorthand or by machine [STENOTYPE OPERATOR (clerical) 202.362-022] and transcribes notes on typewriter, or transcribes from voice recordings [TRANSCRIBING-MACHINE OPERATOR (clerical) 203.582-058]. Composes and types routine correspondence. Files correspondence and other records. *Answers telephone and gives information to callers* or routes call to appropriate official and places outgoing calls. Schedules appointments for employer. *Greets visitors, ascertains nature of business*, and conducts visitors to employer or appropriate person. May not take dictation. *May arrange travel schedule and reservations*. May compile and type statistical reports. *May oversee clerical workers*. May keep personnel records [PERSONNEL CLERK (clerical) 209.362-026]. May record minutes of staff meetings. May make copies of correspondence or other printed matter, using copying or duplicating machine. May prepare outgoing mail, using postage-metering machine. May prepare notes, correspondence, and reports, using word processor or computer terminal.

DOT 201.362-030 (emphasis added). As highlighted by the italics, a number of functions implicate the need for verbal communication, but the DOT entry does not specify the frequency of talking (i.e., occasionally, frequently, or constantly). The VE, in response to a question from Plaintiff's attorney as to how much time is spent answering the phone, testified that it "varies on the setting," but was "[l]ess than a receptionist. That's something that the DOT doesn't really get into in that much detail." (Tr. 62). The ALJ never inquired whether the VE's testimony was consistent with the DOT, a point conceded by Commissioner in her brief. (R. 10, PageID# 2224).

While the VE's testimony may not conflict with the DOT entry itself, it most certainly

---

squarely address Plaintiff's assignment of error. Admittedly, Plaintiff's brief could have been more precise in specifying that the frequent talking requirement derived from the SCO.

conflicts with the demands of the job as set forth in the companion to the DOT, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")*, specifically, § 07.01.03 that addresses the demands of secretarial work. Therein, the job of a secretary (clerical), DOT 201.362-030—the section identified by the VE as constituting Plaintiff's past relevant work—includes among its physical demands **frequent** talking.[3] (Tr. 58). Pursuant to Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000), when a VE "provides evidence about the requirements of a job or occupation," the ALJ "has an affirmative responsibility to ask about any possible conflict between that VE … evidence and information provided in the DOT."[4]

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

---

[3]  Talking is defined as "[e]xpressing or exchanging ideas by means of the spoken word to impart oral information to clients or to the public and to convey detailed spoken instructions to other workers accurately, loudly, or quickly." SCO, App'x C ("Physical Demands").

[4]  "SSR holdings 'are binding on all components of the Social Security Administration.'" *Lancaster v. Comm'r of Soc. Sec.*, 228 Fed. App'x 563, 573 (6th Cir. 2007). The "Purpose" section of SSR 00-4p clarifies that an ALJ, before relying on VE testimony to support a decision, must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), *including its companion publication, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)*," and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1 (emphasis added).

15

SSR 00-4p at *2. First, the ALJ must ask the VE "if the evidence he or she has provided conflicts" with the DOT. *Id*. at *4. Second, if the VE's evidence "appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." *Id*.

Other court decisions within this Circuit have found that a remand is necessary where: (1) the ALJ fails to develop the record by failing to inquiring whether the VE's testimony was consistent with the DOT; *and* (2) the failure to inquire is not harmless because an actual conflict exists between the VE's testimony and the DOT. *See, e.g, Lancaster v. Comm'r of Soc. Sec.*, 228 Fed. App'x 563, 575 (6th Cir. 2007) (finding a remand was necessary where the ALJ failed to inquire about inconsistencies between the VE's testimony and the DOT, and "an inconsistency with the DOT clearly exists"); *accord Stine v. Comm'r of Soc. Sec.*, No. 07-12301, 2008 WL 1837357 at *4 (E.D. Mich. Apr. 23, 2008); *Goulette v. Comm'r of Soc. Sec.*, No. 12-11353, 2013 WL 2371695, at *11 (E.D. Mich. May 30, 2013) ("Following *Lancaster*, the courts in this circuit have generally concluded that the ALJ's failure to inquire about consistency with the DOT is not reversible error unless a potential conflict actually exists…"); c*f. Joyce v. Comm'r of Soc. Sec.*, 662 Fed. App'x 430, 436–37 (6th Cir. 2016) (stating that an "ALJ might reversibly err by failing to inquire about or resolve a conflict between the DOT reasoning levels and a simple-tasks limitation," but affirming based on harmless error under the facts of the case); *Kerr v. Comm'r of Soc. Sec.*, No. 2:13-CV-457, 2014 WL 4243771, at *3 (S.D. Ohio Aug. 26, 2014) ("where the Plaintiff fails to demonstrate an actual conflict, courts have consistently held that an ALJ's failure to comply with SSR 00–4p's inquiry requirement constitutes harmless error").

The facts before the court are analogous to *Miller v. Comm'r of Soc. Sec.*, No. 4:10 CV 2852, 2012 WL 398650, at *16 (N.D. Ohio Feb. 7, 2012) (Knepp, M.J.), wherein the court found

16

that the ALJ relied on "the VE's incorrect testimony to conclude Plaintiff could perform jobs that, according to the DOT and assuming the RFC the ALJ determined she has, she could not perform." The *Miller* decision observed that "[t]his is not the kind of harmless error that results from merely not inquiring about conflicts between VE testimony and the DOT." *Id.* Here too, the court determines that the ALJ's omission was not harmless. If Plaintiff could not perform her past relevant work as a secretary pursuant to the requirements set forth in the DOT and SCO, then the only past relevant which the ALJ determined Plaintiff could perform would be eliminated. While the ALJ is not obligated to follow the DOT over the contradictory testimony of a VE, the very purpose of SSR 00-4p is to apprise an ALJ of a conflict in order to afford him or her the opportunity to resolve the conflict in the decision. SSR 00-4p at *4. Had the ALJ inquired of the VE whether a conflict exists, he may have been alerted to an actual conflict. Instead, the ALJ concluded without any foundation that the VE's testimony was "uncontroverted," which is the inevitable result where no inquiry concerning a conflict is made.

The court recognizes that a number of decisions from the Sixth Circuit Court of Appeals declined to remand where there was a conflict between the VE's testimony and the DOT. However, those decisions are distinguishable because, unlike in the case at bar, the ALJs therein actually inquired whether there was a conflict, and the VE represented that no conflict existed. Those decisions reasoned that while SSR 00-4p "imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she provided conflicts with the information provided in the DOT," no follow-up requirement exists that the ALJ must conduct a further investigation into the accuracy of the VE's testimony. *See, e.g., Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603-06 (6th Cir. 2009) (holding that after asking a VE whether his testimony was accurate "the ALJ had no duty under S.S.R. 00–4p to interrogate him further.") (*citing Martin v. Comm'r of Soc. Sec.,*

170 Fed. Appx. 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")); *accord Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x 163, 168-69 (6th Cir. 2009) ("As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p"); *Staymate v. Comm'r of Soc. Sec.*, 681 Fed. App'x 462, 468 (6th Cir. 2017) (finding nor error where the ALJ specifically asked the VE if his testimony was consistent with the DOT and the claimant's counsel failed to object).

The Commissioner's brief suggests that while the ALJ did not inquire about inconsistencies, Plaintiff's counsel's questions to the VE concerning the amount of time spent answering phones acted as an effective substitute. (R. 10 at PageID# 2224). The court disagrees, as the VE was correct that the amount of time spent answering phones is not addressed in the DOT or the SCO, but the requirement for frequent talking is clearly set forth. Furthermore, there is no indication that the talking requirements associated with the secretary job is comprised solely of answering phones, as speaking with visitors and co-workers is also mandated by the DOT's job description.

As stated above, the court finds Plaintiff has identified an actual conflict between the VE's testimony and SCO. The VE's testimony that the secretary position did not require frequent verbal communication is directly at odds with the description in the SCO. As such, the court cannot excuse the ALJ's failure to comply with SSR 00-4p as harmless error. In the present case, the ALJ never asked, either in specific or general terms, whether the VE's testimony was consistent with the DOT. Based on § 07.01.03, a secretary must perform frequent talking, a requirement that is plainly inconsistent with the VE's testimony, and, thus, the ALJ's failure to inquire into the presence of an inconsistency is not harmless error.

Therefore, the court finds merit in Plaintiff's first assignment of error and recommends remanding this matter for additional VE testimony and a new decision that complies with SSR 00-4p. A remand, rather than an award of benefits, is appropriate, because the ALJ is not obligated to ascribe greater weight to the DOT or SCO than to the VE's testimony. Thus, the potential exists that the ALJ may determine that Plaintiff can still perform her past relevant work or proceed to Step Five and make a determination that could result in a finding of not disabled.

Although the ALJ made alternative findings at Step Five, the court declines to find that these findings negate the need for a remand. The ALJ found that Plaintiff could perform a number of jobs at Step Five *prior* to her turning age fifty-five (55) in December of 2012.[5] (Tr. 21). Plaintiff, who seeks POD and DIB benefits, remained insured until June 30, 2015—her date last insured (DLI). (Tr. 12, 22). While the ALJ ultimately concluded that Plaintiff was not disabled any point prior to her DLI (Tr. 22), the decision is silent as to whether there were a significant number of jobs available at Step Five after Plaintiff turned advanced age (55) in 2012 through the time her eligibility for disability benefits expired in 2015. (Tr. 21-22).

In her final assignment of error, Plaintiff has argued that grid rule 202.06 would have compelled a finding of disability after she turned 55. (R. 8, PageID# 2209-2210). While the court has declined to address that argument on the merits for the reasons stated below, the applicability of the identified grid rule appears to hinge on the transferability of skilled or semi-skilled work skills. A change in VE testimony on remand could have a dispositive impact on the transferability of skills. Therefore, given the uncertainty between whether Plaintiff was disabled after her 55th birthday, the past relevant work determination and the ALJ's error at Step Four, the

---

[5] Those jobs do not require frequent talking.

alternative finding in the decision does not render the failure to comply with SSR 00-4p harmless.

### 2. Weight Ascribed To Various Medical Sources

Plaintiff's second and third assignments of error involve the weight ascribed to the opinions of various medical sources. Under the regulations, the deference required to sources depends on whether a source is considered an "acceptable medical source," a medical source that is not considered an "acceptable" medical source, or merely an "other" source; and whether a medical source constitutes a treating, examining, or non-examining source. *See* 20 C.F.R. §§ 404.1513, 404.1527. Because the court is recommending a remand based on Plaintiff's first assignment of error, the court declines to address these arguments in the interests of judicial economy.

However, when arriving at an RFC assessment, an ALJ "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and *explain* why he did not include their limitations in his determination of Plaintiff's RFC") (emphasis added). While the court does not express any opinion regarding whether the current decision was adequate in this regard, given the need for a remand, a new decision should be mindful of the arguments raised by Plaintiff and explain the weight given to the conflicting medical source opinions.

3. **Step Five of the Sequential Evaluation**

In the fourth assignment of error, Plaintiff asserts that as of her 55th birthday, she should have been found disabled at Step Five of the sequential evaluation. Specifically, Plaintiff maintains that she cannot perform her past relevant work, and, because she cannot perform a full-range of light work, she would be disabled under Grid Rule § 202.06 based on her age (after she turned 55), education, and lack of transferable skills. (R. 8, PageID# 2209-2210). As the court has determined a remand is necessary, it would be premature to address Plaintiff's argument. Upon remand, if the ALJ determines at Step Four that Plaintiff can perform her past relevant work as a secretary after resolving the conflict presented by the DOT, any argument that the ALJ erred at Step Five would be rendered moot.

"[I]f an ALJ finds that a claimant's residual functional capacity matches her past relevant work, the ALJ makes a determination of non-disability at that point (Step 4) and does not move on to Step 5." *Brewster v. Barnhart*, 145 Fed. Appx. 542, 548 (6th Cir. 2005); *see also Meschko v. Comm'r of Soc. Sec.*, 1999 WL 801572 at *1 (6th Cir. Ohio Sept. 28, 1999) (finding no error in the ALJ's failure to consider the medical-vocational guidelines at Step Five, because the evaluation process ceased at Step Four); *Shields v. Chater*, 77 F.3d 493 (10th Cir. 1996) (finding claimant's argument concerning the use of the grids "legally frivolous" noting that "[l]egally, the grids are irrelevant at step four, because they relate to vocational factors that the Secretary does not consider until step five."); *Bennett v. Colvin*, 2015 WL 5693602 at *6 (N.D. Ala. Sept. 29, 2015) ("the Grids are irrelevant because the ALJ properly found Bennett could perform her past relevant work at Step Four"); *Justice v. Astrue*, 2011 WL 1087937, at *21 (S.D. W.Va. Mar. 23, 2011) ("Plaintiff's argument that the ALJ misapplied the Grids is without merit because the ALJ did not decide this case using the Grids at step five; rather, he found that Plaintiff could perform

her past relevant work at step four.”); *accord Norman v. Colvin*, 2016 U.S. Dist. LEXIS 31681 (N.D. Ohio Jan. 4, 2016) (White, M.J.), *adopted by* 2016 WL 922741 (Mar. 3, 2011) (Lioi, J).

Because the court cannot speculate as to the ultimate outcome on remand at Step Four, addressing Plaintiff's argument at this juncture would be premature. In the event the District Court disagrees with this court's recommendation concerning Plaintiff's first assignment of error and finds no error with respect to the ALJ's Step Four determination, then this court would recommend finding that the final assignment of error is rendered moot.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/*David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: November 20, 2017

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied***, 474 U.S. 1111 (1986).**